THOMPSON, Treasurer of the City of Schenectady, *vs.* SCHER-
MERHORN.

The common council of the city of Schenectady was authorized by an act of the
legislature to make by-laws and ordinances ordering any street or lane in the
city to be pitched, levelled, paved, &c. with ▮▮▮▮ and in such *manner* as
they might prescribe, under the superintendan▮▮▮▮ direction of the city super-
intendent.   And in case the owners or occupants of any houses or lots in any
such streets, &c. should neglect or refuse to *comply* with the requisitions of any
such by-laws or ordinances, the common council was authorized to cause so
much of the said streets, &c. in front of the said houses or lots, to be *conformed
to such by-laws or ordinances*, and upon the allowance and payment by the
common council of the expenses incurred in conforming the same to such by-
laws, &c. the common council was authorized to sue for and recover from such
owner or occupant, in the name of the treasurer of the city, the amount of such
expenses, &c.   The common council made a by-law ordering the owners or
occupants of any house, building or lot adjoining the east part of State-street,
by the 20th day of June thereafter, to cause that part of the street in front of
their buildings and lots to be pitched, levelled and paved to the centre of the
street, and the side walks to be pitched, levelled and flagged, at their own ex-
pense, *in such manner as the city superintendent, under the direction of the com-
mittee on roads of the common council, should direct and require.*   But they made
no by-law *prescribing the manner* in which the street should be pitched, &c. or
the side walks pitched, levelled or flagged.   In an action by the treasurer of the
city, against the owner of a lot on State-street, to recover the amount of the
expenses of improving such street, *it was held* that under the act of the legisla-
ture the members of the common council were bound to exercise their judgment
as to the manner in which the streets and side walks were to be pitched, lev-
elled, &c. and that the powers which the legislature had authorized them to
exercise they could not delegate to a committee, or to the city superintendent.
*Held also*, that before the common council could proceed to improve a street, un-
der and by virtue of the statute, they were bound to pass a by-law or ordinance
prescribing the manner in which it was to be pitched, levelled, or paved.
*Held further*, that the by-law or ordinance which was passed by the common
council, was not such an one as the owners or occupants of lots were bound to
obey, and that the action in the name of the treasurer of the city, against the
defendant, to recover the expenses of improving the street opposite his lot could
not be maintained.

MOTION to set aside report of a referee.   The action was
commenced in November, 1846, to recover from the defendant,
for the benefit of the city of Schenectady, about $820 which

had been expended by the city in pitching, levelling, paving and flagging State-street and the side walks thereof in the said city to the centre of the said street in front of the real estate of the defendant.    The declaration set forth an act of the legislature entitled " An act relative to the city of Schenectady," passed on the 29th day of April, 1833, by the 34th section of which the common council of the city was authorized from time to time to make and establish by-laws and ordinances directing any of the streets and lanes of the city to be pitched, levelled, paved, flagged, &c.    It also alledged that on the 3d of October, 1843, the common council passed a by-law or ordinance in these words :

" Sec. 1.  The owners or occupants of any house, building, or lot or lots of ground fronting that part of State-street lying between the western termination of the Albany turnpike and a straight line across State-street, from the west side of a lane leading from State-street to I. M. Schermerhorn's plaster mill, are required by the 20th day of June next, to cause that part of the said street above designated, in front of their respective buildings and lots, to be pitched, levelled and paved to the centre of the said street, at their own expense, in such manner as the city superintendent, under the direction of the committee on roads of the common council shall direct and require.

§ 2.  The owners or occupants of any such house, building, lot or lots of ground fronting that part of State-street specified in the first section of this act, are required by the said 20th day of June next, to cause the side walks opposite their respective buildings or lots, to be pitched, levelled and flagged, at their own expense, in such manner as the city superintendent, under the direction of the committee on roads of the common council, shall direct and require.

§ 3.  Any and every of the said owners or occupants who shall neglect or refuse to conform the street or side walk in front of their houses, buildings or lots, to the requisitions of this ordinance within the time above limited for the purpose, shall forfeit and pay the sum of ten dollars, and in case of such neglect or refusal on the part of such owner or occupant, it shall be the duty

Thompson v. Schermerhorn.

of the said superintendent without delay to cause the street or side walk opposite to the house, building or lot of any such owner or occupant so neglecting or refusing as aforesaid, to be conformed to the requisitions of this ordinance, and the expense to be incurred thereby shall be borne by such owner or occupant, and shall be certified by the said superintendent to the common council, and recovered from such owner or occupant in the name of the treasurer of said city, for the use and benefit of said city."

The declaration also alledged that on the 8th of May, 1846, the common council passed the following ordinance or by-law :

" Resolved, That unless the owners or occupants of any house, building, lot or lots of ground fronting that part of State-street lying between the western termination of the Albany turnpike and a straight line across State-street, from the west side of a lane leading from State-street to I. M. Schermerhorn's plaster mill, comply with the law or ordinance passed the 3d of October, 1843, directing the paving of the east end of State-street and curbing and flagging the side walks by the 20th of May inst. that the superintendent of streets under the direction of the committee on roads, be directed forthwith to do such paving, curbing and flagging."

The plaintiff averred that the defendant had notice of these ordinances; that at the time when they were passed, the defendant owned and occupied property on State-street. The declaration then set forth the several proceedings which were had in making the improvement in question, under and by virtue of the act of the legislature and the above ordinances, and the payment by the city of the expense incurred in improving the street opposite the defendant's land, and alledged notice to him of the amount, and a promise by him to pay it. The declaration also contained the common money counts. The defendant demurred to both counts of the declaration, and the plaintiff joined in demurrer. The cause was referred, and the referee, in May, 1849, made a report in favor of the defendant. The plaintiff made a case, on which he moved to set aside the report.

Thompson *v.* Schermerhorn.

*S. A. Daggett,* for the plaintiff.

*M. S. Newton,* for the defendant.

By the Court, CADY, J.   The case made by the plaintiff has in no respect been contradicted by the defendant, and must therefore be taken as true.   It is claimed on the part of the plaintiff, that the defendant has been made liable to pay the expenses in question according to the 34th section of an act relative to the city of Schenectady, passed on the 29th day of April, 1833.   That section authorizes the common council of the city from time to time to make and establish by-laws and ordinances ordering and directing any of the streets and lanes in the said city, or any parts of them to be pitched, levelled, paved, flagged, Macadamized, or covered with broken stone, gravel or sand, &c. within such time and in such manner as they may prescribe—under the superintendance and direction of the city superintendent ; and in case the owners or occupants of any houses or lots in any such streets or lanes shall neglect or refuse to *comply* with the requisitions of any such *by-laws or ordinances,* it shall and may be lawful for the said common council to cause so much of the said streets or lanes in front of the said houses or lots of the person or persons so neglecting or refusing, to be *conformed to such by-laws* or ordinances, under the direction of the said superintendent ; and upon the production by the said superintendent, to the said common council, of an account certified under his oath of office, of the expenses incurred *in conforming the same* to such by-laws or ordinances, and the allowance and payment thereof by the said common council, it shall and may be lawful for them to sue for and recover from such owners or occupants, or their legal representatives, in the name of the treasurer of the said city, the amount of such expenses, with interest and costs, in any court having cognizance thereof, &c.

Has the common council made any by-law which the defendant was bound to obey ?   The common council was authorized to make by-laws and ordinances ordering any street or lane in

the city to be pitched, levelled, paved, &c. within *such time* and in such *manner* as they may prescribe—under the superintendance and direction of the superintendent. They have made no such by-law. They made a by-law ordering the owners or occupants of any house, building or lot adjoining the east part of State-street by the 20th of June thereafter to cause that part of the street in front of their buildings and lots to be pitched, levelled and paved to the centre of the street, and the side walks to be pitched, levelled and flagged at their own expense, *in such manner* as the city superintendent under the committee on roads of the common council should direct and require. But they have made no by-law *prescribing the manner* in which the street should be pitched, levelled and paved, or the side walks be pitched, levelled and flagged. The by-law does not show how wide the side walk is to be; whether one foot or ten feet—or which way it is to be pitched—from or towards the street; or whether the street is to be arched or depressed in the centre; or whether there were any and what gutters on each side of the street, or whether the street and side walks are to be level from one end to the other; or whether the east or west end is to be lower than the other; or what descent or ascent by the yard or rod is to be in the street or side walk. By the by-law all these important and material matters are left to the discretion of the superintendent and the direction of the committee on roads, of the common council.

No man on reading the by-law could tell in what *manner* the side walk and street were to be pitched, levelled, paved or flagged. The owner of a lot would have to go to the city superintendent and ask him how wide are the side walks to be? which way are they to be pitched, to or from the streets? are they to be made level from one end to the other—or is one end to be higher, and how much higher, than the other? where is to be the gutter, in the centre or the side of the street? The by-law should furnish an answer to all of these questions. These are matters upon which the members of the common council should exercise their judgment. They are to judge how the streets and side walks are to be pitched, levelled, and paved or

flagged; and powers which the legislature have authorized them to exercise they cannot delegate to a committee, or to the city superintendent.

That the by law must prescribe the *manner* in which the work is to be done is further shown by other provisions contained in the 34th section : " If the owners or occupants of any houses or lots in any such street or lanes shall refuse or neglect to comply with the requisitions of any such by-law or ordinance, it shall and may be lawful for the said common council to cause so much of the said streets or lanes in front of the houses or lots of the person or persons so neglecting or refusing, to be *conformed to such by-laws or ordinances,* under the directions of the said superintendent," &c. The superintendent has nothing to do but to see that the work be done in the *manner* prescribed by the by-law or ordinance.

In this case the by-law did not prescribe the manner in which the street and side walk were to be pitched, levelled, paved or flagged. All the information the law gave the defendant was that the street was to be pitched, levelled and paved, and the side walk pitched, levelled and flagged. One owner, opposite his lot, might wish to have a side walk six feet, another ten feet wide—and obedience to the law would require no uniformity in the width of the side walk opposite to the lots of different owners.

No man on reading the by-law would be informed that curb stones were to be used ; or that there were to be cross-walks; or that the street or side walks were to be covered with brick. Yet more than one-eighth of the sum claimed from the defendant was for cross-walks, curb stone and brick, which were not prescribed in the by-law.

Could it be said in this case that the side walk was not conformed to the by-law, because there were no curb stones on one side of it—or because it was not covered with brick?

By the 34th section of the act of 1833, when the street in the front of a vacant lot has been *conformed* to any by-law or ordinance by and at the expense of the common council, in consequence of the neglect or refusal of the owner of such lots to comply with the requisitions of the by-law or ordinance, the

common council may cause the lots to be sold. The power is given to the common council to sell such lots ; the power is not given to sell because the owner of the lot has neglected or refused to obey the orders of the city superintendent.

I am of opinion that the by-law set out in the declaration and given in evidence was not one which the defendant was bound to obey ; that the plaintiff showed no right to recover upon any count in the declaration ; and consequently that the motion to set aside the report of the referee should be denied.

